**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELVIN CLAUDE COATS, II, | ) Case No. CV 18-10135-DSF (JPR) |
| Plaintiff, | ) |
| | ) ORDER DISMISSING COMPLAINT WITH |
| v. | ) LEAVE TO AMEND |
| | ) |
| LOS ANGELES POLICE DEPARTMENT, | ) |
| | ) |
| Defendant. | ) |

On December 6, 2018, Plaintiff filed pro se a civil-rights action under 42 U.S.C. § 1983. He was subsequently granted leave to proceed in forma pauperis. His civil-rights claims arise from a 72-hour psychiatric hold on him effected by the Los Angeles Police Department after he attempted suicide.

After screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court finds that its allegations fail to state a claim upon which relief might be granted. Because it appears that at least some of the defects can be cured by amendment, the Complaint is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se

1

litigant must be given leave to amend complaint unless it is absolutely clear that deficiencies cannot be cured). If Plaintiff desires to pursue any of his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed below.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff "attempted suicide mid December 2017." (Compl. at 4.) He sent "text and video" of the attempt "to a friend in Florida." (Id.)[1] He does not specifically say where the attempt took place, but he lives in an apartment in Winnetka and further alleges that the events giving rise to his claims occurred there. (See id. at 2, 4.) He "went to [the] E.R." the "next morning" and then "came back home" to prepare for a winter session that was scheduled to begin on January 2, 2018, at an unidentified college. (Id. at 4.) Plaintiff does not specify which emergency room he went to, any information he may have given to staff there, whether he sought or was provided treatment, and if so for what symptoms, injuries, or conditions. (See id.)

On the morning of January 1, 2018, "over a week after [he] attempted suicide," the LAPD "came to [Plaintiff's] residence," "arrested" him, and "forced [him] to detainment [sic] & 72 hours of hold at local E.R. [sic]." (Id.) He does not allege facts as to his mental state or behavior at the time of the "arrest" or any knowledge the officers had of his suicide attempt or mental state. (See id.) Nor does he allege facts as to any mental-

---

[1] Plaintiff does not allege facts as to what method he used, when he sent the text and video to his friend, or the specific contents of the text or video. (See Compl. at 4.)

2

health diagnosis or history he may have had. (See id.) He alleges that he suffered "[e]motional distress," "[s]uppression of [i]mmune system," "[b]ronchitis," and "[p]sychological trauma" from the incident. (Id. at 5.)[2]

Plaintiff brings claims for "false arrest/imprisonment" under the Fourth Amendment (id. at 3-4) and "discrimination" on an unspecified legal theory (id. at 4). He also alleges a "conspir[acy]," which the Court liberally construes under 42 U.S.C. § 1985.[3] (Id.; see also id. at 3.) The Los Angeles

---

[2] Plaintiff does not specifically allege whether the harms he claims to have suffered arose from the officers' conduct at his home or from events that may have happened while he was detained at the emergency room. (See Compl. at 4-5.)

[3] The Complaint is drafted on a standard form for nonprisoner civil-rights actions; Plaintiff checked a box on that form indicating that he sues under 42 U.S.C. § 1983 (see Compl. at 3) and filled out a later section of the form asking § 1983 plaintiffs to "explain how each defendant acted under color of state or local law" (see id. at 4). But he also cites 18 U.S.C. §§ 241 and 242 as the basis for some or all of his claims. (See id.) Those statutes criminalize deprivation of civil rights under color of state law and any conspiracy to deprive someone of constitutional or other federal rights, among other conduct. Private individuals generally may not prosecute others for alleged crimes, and the Supreme Court has not inferred a private right of action from the existence of a criminal statute. Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994) ("we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions"); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam) (no private right of action exists under §§ 241 or 242).

Sections 1983 and 1985 provide a private civil right of action for deprivation of civil rights under color of state law and conspiracy to do the same, respectively. See 42 U.S.C. §§ 1983, 1985. The Court therefore considers Plaintiff's conspiracy claim under § 1985 and his other claims under § 1983. See Mata v. Lynch, 135 S. Ct. 2150, 2156 (2015) (upholding federal courts' practice of recharacterizing pleadings so as to offer possibility of relief);

3

Police Department is the sole named Defendant, and Plaintiff specifically indicates that he sues it in its "[o]fficial capacity." (Id. at 2.)[4] He seeks $256,984 in general damages,[5] $2400 in special damages for "future medical expenses," and "maximum relief" in punitive damages. (Id. at 5.)

**STANDARD OF REVIEW**

A complaint may be dismissed as a matter of law for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (as amended) (citation omitted); accord O'Neal v. Price, 531 F.3d 1146, 1151 (9th Cir. 2008). In considering whether a complaint states a claim, a court must generally accept as true all the factual allegations in it. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). The court need not accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In

---

Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (pro se plaintiff's failure to identify correct legal theory not fatal to cause of action).

[4] The email address he provides for Defendant appears to belong to an individual named Dominic Choi, however. (See Compl. at 2.)

[5] That amount includes itemized alleged costs for 311 days' worth of "[p]ain, suffering, [i]nconvenience: $44,784.00," "[e]motional [d]istress: $62,200.00," and "[l]oss of [c]onsortium: $150,000.00." (Compl. at 5.) He has not alleged facts as to how he determined those numbers; what pain, suffering, or emotional distress he suffered; whose consortium was lost; or what happened after 311 days to remedy the situation. (See id. at 4-5.)

4

re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); see also Shelton v. Chorley, 487 F. App'x 388, 389 (9th Cir. 2012) (finding that district court properly dismissed civil-rights claim when plaintiff's "conclusory allegations" did not support it). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

**DISCUSSION**

**I.  Municipal-Liability Standard**

The Complaint names the LAPD as its only Defendant. (See Compl. at 2.) It does not name any individual officers as Defendants or sue anyone in his or her individual capacity. (See id.) Municipalities and local-government entities are considered "persons" under § 1983 and therefore may be liable for causing a constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); see also Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). California police departments are independently suable public entities. See Streit v. Cnty. of

5

L.A., 236 F.3d 552, 565 (9th Cir. 2001) (citing Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 605 (9th Cir. 1986), and Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 n.2 (9th Cir. 1988)).

Because no respondeat superior liability exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom. Monell, 436 U.S. at 694; City of Canton v. Harris, 489 U.S. 378, 385-87 (1989). A plaintiff must show "that a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citation omitted).

In addition, a plaintiff must allege facts demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.; see also Thompson v. City of L.A., 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are [sic] insufficient to establish custom."), overruled on other grounds by Bull v. City & Cnty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc). "A custom can be shown or a policy can be inferred from widespread practices or

'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Pierce v. Cnty. of Orange, 526 F.3d 1190, 1211 (9th Cir. 2008) (as amended) (quoting Gillette, 979 F.2d at 1349).

A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. See Harris, 489 U.S. at 388. A plaintiff claiming failure to train must allege facts demonstrating the following:

> (1) he was deprived of a constitutional right, (2) the [municipality] had a training policy that "amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact," and (3) his constitutional injury would have been avoided had the [municipality] properly trained those officers.

Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007) (citation and alterations omitted).

Further, the Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." Trevino, 99 F.3d at 920. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it.'" Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (citation omitted); accord Gillette, 979 F.2d at 1346-47.

**II. Plaintiff Has Not Stated Any Municipal-Liability Claim**

   A.   Fourth Amendment

   Plaintiff's main contention appears to be that he was "false[ly] arrest[ed]/imprison[ed]" in violation of the Fourth Amendment. (Compl. at 3-4.) For the following reasons, he has not stated any claim against the LAPD on that theory.

      1.   Applicable law

   An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983. See, e.g., Dist. of Columbia v. Wesby, 138 S. Ct. 577, 585-86 (2018); Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1076 (9th Cir. 2011) (per curiam). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (citation omitted). Probable cause is determined based on the totality of circumstances known to the arresting officers at the time of arrest. Illinois v. Gates, 462 U.S. 213, 238 (1983). Because probable cause is an objective inquiry, the arresting officer's "subjective reason for making the arrest" does not matter; a public, warrantless arrest comports with the Fourth Amendment as long as there was probable cause for a reasonable officer to arrest the suspect for some crime, which need not be the actual offense charged or the one articulated by the arresting officers. Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004).

   California Welfare and Institutions Code section 5150(a) allows a "peace officer" or other county-designated professional

to take into custody "for up to 72 hours" a person who, "as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled." Subsection (b) of that same provision clarifies that the person making the detention "shall not be limited to consideration of the danger of imminent harm."

"[S]uch a seizure is analogous to a criminal arrest and must therefore be supported by probable cause." Maag v. Wessler, 960 F.2d 773, 775 (9th Cir. 1991) (per curiam) (as amended Apr. 1, 1992). Probable cause under section 5150 exists "when the totality of the circumstances 'would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled.'" Austen v. Cnty. of L.A., No. 15-07372 DDP (FFMx), 2018 WL 501552, at *5 (C.D. Cal. Jan. 19, 2018) (quoting People v. Triplett, 144 Cal. App. 3d 283, 287-88 (1983)). An officer initiating a hold under section 5150 may "tak[e] into account the past conduct, character, and reputation of the detainee." Triplett, 144 Cal. App. 3d at 288.

The Fourth Amendment governs a claim for unlawful detention by law-enforcement actors "even beyond the start of legal process." Manuel v. City of Joliet, 137 S. Ct. 911, 920 (2017). To raise such a claim, a plaintiff must show that the officer violated his constitutional rights by detaining or arresting him without probable cause. Id. at 918; Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990). Although claims of unlawful psychiatric holds are usually analyzed under the Due Process Clause of the 14th Amendment, see Jensen v. Lane Cnty., 312 F.3d 1145, 1147 (9th

Cir. 2002) (applying due-process, not Fourth Amendment, standard to claim that doctor unlawfully extended plaintiff's involuntary psychiatric detention by two days), they may arise under the Fourth Amendment as well, see Maag, 960 F.2d at 775.

Any Fourth Amendment claim for unlawful detention by law-enforcement officers, like any claim for false arrest, thus depends on an absence of probable cause. See Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam) (criminal arrest); Austen, 2018 WL 501552, at *5, *6-8 (initiation of psychiatric hold and brief detention at police station).

2. Analysis

Plaintiff alleges that he attempted suicide in mid-December 2017, sent text and video "showing [his] attempt" to a friend at an unknown time after that, and was "forced . . . to detainment [sic]" by LAPD officers, who initiated a 72-hour hold at a local emergency room "over a week" after the attempt. (Compl. at 4.) Those allegations suggest that he was subjected to an involuntary psychiatric hold under section 5150, and the officers likely had probable cause to detain him under that provision regardless of any stated basis for their conduct.[6] See Devenpeck, 543 U.S. at 153-54 (Fourth Amendment satisfied even when probable cause exists

---

[6] Plaintiff does not specifically allege what basis the officers cited for detaining him or whether they knew about his suicide attempt and, if so, when and how they came by that knowledge. (See Compl. at 4.) The Complaint's sparse factual allegations nevertheless suggest that the officers' arrival and Plaintiff's detention had some causal nexus with his suicide attempt. (See id.)

10

on basis other than that articulated by officers); Bias v. Moynihan, 508 F.3d 1212, 1220-21 (9th Cir. 2007) (officer had probable cause to detain plaintiff under § 5150 one day after she sent letter to judge threatening to kill herself if court ruled against her and officer "observed that [she] appeared depressed," and again after she displayed "agitated" and paranoid behavior about one year later); Heater v. Southwood Psychiatric Ctr., 42 Cal. App. 4th 1068, 1075 (1996) (probable cause existed for 72-hour hold under § 5150 from third-party reports that plaintiff "had made threats to harm himself and others" and had three-week history of "ongoing depression"); Triplett, 144 Cal. App. 3d at 288 (probable cause for involuntary psychiatric hold existed for "intoxicat[ed]" and "tearful" plaintiff with "obvious physical signs of a recent suicide attempt"). If so, no Fourth Amendment violation occurred.[7]

But even if the officers did not have probable cause, his Fourth Amendment claim would still fail because he sues solely on a municipal-liability theory and has not alleged that his "arrest" stemmed from any LAPD policy, custom, or practice; indeed, he has

---

[7] Plaintiff also brings a claim of "false . . . imprisonment" against the LAPD (Compl. at 4) but then alleges that he was "h[e]ld" at a local emergency room (id.). He has not named any medical facility or medical professional as a Defendant and does not sue anyone on a due process theory. (See generally Compl. at 1-5.) If he wishes to pursue a false-imprisonment claim in an amended pleading, he must specifically allege as much and name a proper Defendant. See Jensen, 312 F.3d at 1147 (five-day detention by doctor at medical facility was due-process not Fourth Amendment claim); Austen, 2018 WL 501552, at *6-8 (no Fourth Amendment claim against officers based on plaintiff's brief detention at police station before longer psychiatric hold at medical facility when officers' detention was supported by probable cause).

11

not alleged that any relevant policy, custom, or practice existed. (See generally Compl. at 3-5.) His single paragraph of factual allegations describes one incident on January 1, 2018, and therefore does not support an inference that the LAPD had or has a longstanding custom or practice of detaining people after they have attempted suicide, as required for a viable claim against the LAPD. See Harris, 489 U.S. at 385; Trevino, 99 F.3d at 918. Plaintiff has not identified the officers involved, and his factual allegations give no reason to think any of them had policymaking authority or that anyone who did knew of their actions and approved their alleged malfeasance. Cf. Christie, 176 F.3d at 1239-40 (denying summary judgment on Monell claim when facts showed that supervisor with policymaking authority had notice of and approved subordinate officer's allegedly unconstitutional actions). Nor does anything in the Complaint suggest that the conduct he challenges resulted from a failure to train officers or that more or different training would have prevented the harms he claims to have suffered. See Blankenhorn, 485 F.3d at 484-85.

Should Plaintiff decide to pursue a Fourth Amendment claim against the LAPD in an amended pleading, he must allege specific facts showing that he was detained without probable cause, see Cabrera, 159 F.3d at 380, and that his detention was the result of some department policy, custom, or practice, Harris, 489 U.S. at 385.

B. Equal Protection

Plaintiff alleges that Defendant "subject[ed] [him] to discrimination" (Compl. at 4), which the Court liberally construes

as an equal protection claim under the 14th Amendment.  The
Complaint does not allege sufficient facts to state a claim on
that theory, however.

### 1. Applicable law

To state an equal protection claim, Plaintiff must show that
Defendant acted with an intent or purpose to discriminate against
him based on his membership in some protected class.  See Barren
v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  "Intentional
discrimination means that a defendant acted at least in part
because of a plaintiff's protected status."  Maynard v. City of
San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994) (as amended)
(emphasis in original).  Because government-entity liability is
his only theory of relief, he must also allege facts demonstrating
that he meets the standard for such claims set forth in Section I.

### 2. Analysis

Plaintiff has not alleged that he belongs to any particular
protected class.  Nor has he specifically alleged any reason for
Defendant's conduct, much less that it was motivated by an intent
to discriminate against him based on his membership in some
protected class.  (See Compl. at 4.)  Although Plaintiff admits to
attempting suicide, he nowhere alleges that he was mentally ill at
any relevant time, and in any event "federal courts do not treat
the mentally ill as a suspect or quasi-suspect class and thus
apply rational-basis review in equal protection claims" involving
them.  Manning v. Germanow, No. CV 13-1388-ABC (AGR)., 2013 WL
6683675, at *4 (C.D. Cal. Dec. 16, 2013) (alteration and citation
omitted); see also Heller v. Doe by Doe, 509 U.S. 312, 321 (1993)
(equal protection claims involving mentally ill people given

13

rational-basis review).  The Complaint suggests that LAPD officers initiated Plaintiff's hold at least in part because of concerns about his welfare following his suicide attempt (see generally Compl. at 4), which if true would be a rational basis for their conduct.  Thus, Plaintiff has not adequately pleaded any equal protection violation, much less one that resulted from an LAPD custom, policy, or practice.  See City of L.A. v. Heller, 475 U.S. 796, 799 (1986) (per curiam) (no Monell liability absent showing of constitutional injury); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996) (same).  This claim therefore fails as well.

Should Plaintiff choose to pursue an equal protection claim in an amended pleading, he must allege specific facts showing that he is a member of a protected class, that Defendant intentionally discriminated against him based on his membership in that class, and that Defendant's conduct resulted from an LAPD policy, custom, or practice.

    C.    Conspiracy

Plaintiff alleges that the conduct in the Complaint was part of a "[c]onspiracy [a]gainst [r]ights," evidently referring to his rights to be free from discrimination and false arrest and imprisonment.  (See Compl. at 3-4.)  The Court construes this claim under § 1985(3).[8]

---

[8] As noted above, Plaintiff ostensibly brings his conspiracy claim under 18 U.S.C. § 242, for which there is no private right of action, and the Court therefore construes it under § 1985. (See supra note 3; see also Compl. at 3.)  But § 1985 has three subsections; subsection (1) prohibits conspiracies to prevent federal officers from performing their duties and subsection (2) prohibits conspiracies to obstruct justice by, for example,

14

1. <u>Applicable law</u>

Section 1985(3) prohibits conspiracies to deprive "any person or class of persons" of equal protection under the laws, equal privileges and immunities under the laws, or the right to vote. Id. Any party injured as a result of a violation of § 1985 "may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." Id.

To state a claim under § 1985(3), a plaintiff must allege "(1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993) (citations omitted). "[T]he plaintiff must state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929-30 (9th Cir. 2004) (citation omitted) (affirming dismissal when complaint was "devoid of any discussion of an agreement" among defendants).

The Monell municipal-liability doctrine applies to claims under § 1985(3). See Luke v. Abbott, 954 F. Supp. 202, 202 n.1 (C.D. Cal. 1997); Burke v. City of Santa Monica, No. CV 09-02259

---

intimidating witnesses, parties, or jurors. The conduct alleged in the Complaint does not appear to implicate either of those provisions, and so the Court construes this claim under subsection (3). Should Plaintiff wish to pursue a conspiracy claim under one of the other subsections, he must allege appropriate facts in any amended pleading he may choose to file.

15

MMM (PLAx), 2010 WL 11549360, at *20 n.123 (C.D. Cal. Dec. 8, 2010). "[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." Kulkarni v. Upasani, 659 F. App'x 937, 939-40 (9th Cir. 2016) (citation and alteration omitted) (upholding dismissal of § 1985(3) claim against county social-services agency because plaintiff had not adequately alleged constitutional deprivation or agency's participation in conspiracy).

### 2. Analysis

As discussed above, Plaintiff has not adequately pleaded any Monell claim against the LAPD under § 1983, nor has he alleged that Defendant's conduct arose from any racial or class-based discriminatory animus. Moreover, he has not alleged the existence of any agreement among LAPD officers or between the LAPD and anyone else to deprive him of his constitutional rights, or that the LAPD had a policy or custom of conspiring to detain people unlawfully following suicide attempts. (See generally Compl. at 4.) He accordingly has failed to state any claim for conspiracy. See Kulkarni, 659 F. App'x at 939-40.

If Plaintiff decides to pursue a conspiracy claim in an amended pleading, he must allege specific facts showing an agreement between Defendant and someone else to deprive him of his constitutional rights, that that agreement was motivated by discriminatory animus, and that he actually suffered a constitutional deprivation. See Olsen, 363 F.3d at 929-30. If he intends to proceed on a municipal-liability theory, he must also allege facts showing that the constitutional deprivation resulted

from a policy, custom, or practice as described in Section I.[9]

**III. Plaintiff's Damages Claims Are Not Viable**

Plaintiff alleges that he suffered various medical and emotional harms from Defendant's conduct, including "suppression of [i]mmune system," "[b]ronchitis" (for which he apparently received treatment), and "psychological trauma" (which he contradictorily alleges is "untreated" and subject to "partial-medication management"). (Compl. at 5.) He seeks more than $250,000 from Defendant as a result of those supposed harms, apparently based on 311 days of "[p]ain, suffering, [i]nconvenience," "[e]motional [d]istress," and "[l]oss of [c]onsortium" as well as "future medical expenses" for three months of counseling. (Id.)

Damages that are "speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery."

---

[9] Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to allege sufficient facts to give fair notice of his claims and to enable the other party to defend itself effectively, and to plausibly suggest entitlement to relief such that it is not unfair to subject the opposing party to the expense of discovery and continued litigation. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); see also Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th Cir. 1995) (Rule 8 requires that complaint provide "minimum threshold" giving defendant "notice of what it is that it allegedly did wrong"). Although for the reasons discussed above Plaintiff has not adequately pleaded any claim on any of his theories, his equal protection, false-imprisonment, and conspiracy claims also appear to fall short of the Rule 8 standard. Failure to comply with Rule 8 is an independent basis for dismissal even when a pleading is not otherwise "wholly without merit." See McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996). He is warned that should he choose to file an amended pleading, he must allege what conduct by whom he contends is unlawful under which legal theory, and he must name as a Defendant the entity or individual he contends is responsible for each alleged offense.

17

Navellier v. Sletten, 262 F.3d 923, 939 (9th Cir. 2001) (citation omitted); see also Krainski v. Nev. ex rel. Bd. of Regents, 616 F.3d 963, 971 (9th Cir. 2010) (plaintiff's speculative allegations of "psychological trauma," "loss of liberty," and potential impairment of future employment opportunities insufficient to claim damages in civil-rights case). Plaintiff has not alleged how the LAPD suppressed his immune system or gave him bronchitis, and no explanation is apparent to the Court. (See generally Compl. at 4-5.) Indeed, Plaintiff expressly alleges that he was held for three days not at any police facility but at a nondefendant "local E.R." (id. at 4), presumably referring to an emergency room.

Nor has Plaintiff clarified the extent to which his alleged psychological and emotional difficulties were proximately caused by Defendant's conduct as opposed to that of the "E.R." that actually held him for three days (id. at 4-5) or, for that matter, what his psychological state was before his suicide attempt and why any mental-health problems since then, including his alleged need for three months of "counseling" (id. at 5), should be attributed to Defendant. He also alleges "loss of consortium" — which in any event is an independent state-law tort and not a federal civil-rights theory of damages, see Bosworth v. United States, No. CV 14-0498-DMG (SS), 2016 WL 9651128, at *14-15 (C.D. Cal. Dec. 9, 2016), accepted by 2017 WL 4075130 (C.D. Cal. Sept. 12, 2017) — without identifying whose consortium was lost and what

the LAPD had to do with it.  (See Compl. at 4-5.)[10]

Such speculative and implausible allegations do not state a proper claim for damages under §§ 1983 or 1985.  See Krainski, 616 F.3d at 971; Navellier, 262 F.3d at 939.  If Plaintiff decides to file an amended pleading, he must allege specific facts supporting viable and actionable damages claims for whatever harms he purports to have suffered.

Plaintiff also seeks "maximum relief" in punitive damages against the LAPD.  (Compl. at 5.)  Local-government entities and their employees in their official capacity are immune from suit for punitive damages under § 1983.  See Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985).  He should omit such demands from any amended pleading he chooses to file.

********************

If Plaintiff desires to pursue his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed above.  The FAC should bear the docket number assigned to this case, be labeled "First Amended Complaint," and be complete in and of itself, without reference to the original Complaint or any other pleading, attachment, or document.

Plaintiff is advised that he may wish to seek help from one of the federal "pro se" clinics in this District.  The clinics

---

[10] Moreover, in California a loss-of-consortium claim may be brought only by the injured party's spouse, not by the injured party himself or even his parent or child.  See Lefiell Mfg. Co. v. Super. Ct., 55 Cal. 4th 275, 284-85 (2012).  Plaintiff apparently alleges that he is the injured party and has not alleged facts suggesting that he is or was married.  (See Compl. at 4-5.)

19

offer free on-site information and guidance to individuals who are representing themselves (proceeding pro se) in federal civil actions. They are administered by nonprofit law firms, not by the Court. The clinic closest to Plaintiff is located in Suite 170 of the Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012. It is open Mondays, Wednesdays, and Fridays, 9:30 a.m. to 12 p.m. and 2 to 4 p.m. Useful information is also available on the clinics' website, http://prose.cacd.uscourts.gov/los-angeles. In light of the ongoing federal-government shutdown, Plaintiff is advised to first contact any clinic he wishes to attend to obtain the most current information on its hours and availability.

**Plaintiff is warned that if he fails to timely file a sufficient FAC, the Court may dismiss this action on the grounds set forth above or for failure to diligently prosecute.**[11]

DATED: January 18, 2019

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[11] If Plaintiff believes this order erroneously disposes of any of his claims, he may file objections with the district judge within 20 days of the date of the order. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015) ("When a magistrate judge believes she is issuing a nondispositive order, she may warn the litigants that, if they disagree and think the matter dispositive, they have the right to file an objection to that determination with the district judge.").